~~SEALED~~

CASE UNSEALED PER ORDER OF COURT

FILED

18 JUN 29 PM 4:28

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: /s/ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2018 Grand Jury

| UNITED STATES OF AMERICA, | Case No. **18CR3072 BTM** |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 371 – Conspiracy to Commit Securities Fraud; Title 15, U.S.C., Secs. 78j(b), 78ff, and Title 17, C.F.R., Sec. 240.10b-5 – Securities Fraud; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |
| ANDREW HACKETT (1), ANNETTA BUDHU (2), VIKRAM KHANNA (3), KULDEEP SIDHU (4), KEVIN GILLESPIE (5), | |
| Defendants. | |

The Grand Jury charges, at all times material:

**INTRODUCTORY ALLEGATIONS**

Relevant Individuals and Entities

1. Defendant ANDREW HACKETT, a resident of Canada, worked as a stock promoter in Canada, controlled Free Life Investments, Inc., and participated in the management and control of one or more accounts at domestic securities brokerage firms, and an account at an offshore brokerage firm (the "Offshore Brokerage Account", and collectively with the accounts at domestic brokerage firms, the "Brokerage Accounts").

cc: PRETRIAL

1 NALT

APA:nlv:San Diego:6/29/18

2. Defendant ANNETTA BUDHU, a resident of New York, New York, brokered corporate shell companies, and was a representative of Arias Intel Corp.

3. Defendant VIKRAM KHANNA, a resident of Porter Ranch, California, worked as a stock promoter.

4. Defendant KULDEEP SIDHU, a resident of Canada, participated in the management and control of the Brokerage Accounts.

5. Defendant KEVIN GILLESPIE, a resident of Tampa, Florida, worked at a securities brokerage firm, and was the Chief Executive Officer of Arias Intel Corp.

6. Arias Intel Corp. ("Arias," the "Company," or "ASNT") was an entity incorporated in the state of Nevada, with its principal place of business in Tampa, Florida. It was formerly known as First Harvest Corp. until on or about December 1, 2017, when it changed its name to Arias Intel Corp. Arias purported to be "a digital media platform for tech, media and gaming, which includes mobile gaming, augmented reality, on-demand delivery, digital and social media, and e-commerce."

7. Confidential Witness 1 ("CW-1"), was a resident of California, and worked as a stock promoter.

8. A pump-and-dump scheme was a fraudulent scheme that typically involved the artificial inflation of the stock price of a publicly-traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effected the artificial inflation in share price by, among other things, issuing news releases and promotional materials regarding the company and its stock - often containing false, misleading, or exaggerated information - and by engaging in manipulative trading of the

stock to affect its price and generate the appearance of demand for the shares.

## Count 1 - Conspiracy

(18 U.S.C. § 371)

9. Paragraphs 1 through 8 of the Introductory Allegations above are re-alleged as if fully set forth herein.

10. Beginning on a date unknown to the Grand Jury but no later than October 2017, and continuing until on or about January 2018, within the Southern District of California and elsewhere, defendants ANDREW HACKETT, (HACKETT), ANNETTA BUDHU, (BUDHU), VIKRAM KHANNA, (KHANNA), KULDEEP SIDHU, (SIDHU), and KEVIN GILLESPIE, (GILLESPIE), and other individuals and entities known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit an offense against the United States, that is, securities fraud, namely, to knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Arias Intel's Corp.'s securities, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

MANNER AND MEANS

11. It was part of the conspiracy that defendants BUDHU and GILLESPIE would seek out others to promote Arias and its stock in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, Arias stock.

12. It was further part of the conspiracy that defendant HACKETT would promote, and find others to promote, Arias and its stock in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, Arias stock.

13. It was further part of the conspiracy that HACKETT would loan money to Arias in exchange for notes that were convertible into Arias stock.

14. It was further part of the conspiracy that defendants BUDHU and GILLESPIE would arrange for the transfer of significant blocks of Arias stock into the Brokerage Accounts.

15. It was further part of the conspiracy that defendants HACKETT, BUDHU, and GILLESPIE would make misrepresentations to Arias' transfer agent, including about their intentions to solicit orders for Arias stock.

16. It was further part of the conspiracy that defendant HACKETT would engage call room operators to contact potential investors and convince them to purchase Arias stock, in exchange for a portion of the investments made by those investors.

17. It was further part of the conspiracy that KHANNA would promote Arias and its stock through the use of a specific website (the "Stock Promotion Website") in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, Arias stock.

18. It was further part of the conspiracy to gather information regarding who owned Arias' free trading stock, in order to conduct the manipulation scheme in a more profitable manner and determine where promotional efforts might be more and less effective.

19. It was further part of the conspiracy that defendants HACKETT and SIDHU would engage in manipulative trading in Arias stock in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, Arias stock.

20. It was further part of the conspiracy that defendant GILLESPIE would create corporate press releases to be published by Arias, and that defendants BUDHU and GILLESPIE would attempt to publish such press releases in conjunction with efforts to promote Arias and its stock on the Stock Promotion Website, in order to artificially avoid the deflation of, maintain the price of, and inflate the share price of, Arias stock.

21. It was further part of the conspiracy that defendants HACKETT and SIDHU would sell Arias stock that was held in the Brokerage Accounts into the open market after the stock price was artificially inflated.

22. It was further part of the conspiracy that defendants HACKETT and SIDHU would distribute 40 percent of the proceeds from the sales of Arias stock from the Brokerage Accounts to KHANNA and CW-1, 10 percent of such proceeds to SIDHU, and some portion of such proceeds to HACKETT.

23. It was further part of the conspiracy that defendants HACKETT, KHANNA, SIDHU, BUDHU, and GILLESPIE would communicate by phone, email, and encrypted communications about the status and progress of the conspiracy.

OVERT ACTS

24. In furtherance of the conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   a. On or about August 8, 2017, defendant BUDHU, through an entity she controlled, sold to defendant HACKETT, through an entity he controlled, 200,000 shares of Arias stock pursuant to a stock purchase agreement.

   b. On or about August 10, 2017, HACKETT, through an entity he controlled, loaned Arias $300,000 in exchange for one or more convertible short-term promissory notes.

   c. On or about the following dates, defendants HACKETT, BUDHU and GILLESPIE submitted seller's representation letters to Arias' transfer agent, which letters falsely represented that "I have not made and do not propose to make any payment in connection with the offer or sale of the Shares to any person or entity except any customary broker's commission or dealer's charges. I have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and I will not do so."

| Date | Signatory |
|---|---|
| August 4, 2017 | Defendant GILLESPIE |
| August 28, 2017 | Defendant BUDHU |
| August 31, 2017 | Defendant HACKETT |

   d. On or about October 26, 2017, defendant KHANNA spoke by phone with CW-1 about his agreement to promote Arias stock with CW-1, in exchange for 40 percent of the proceeds from the eventual sales of Arias stock from the Brokerage Accounts. Defendant KHANNA also told

CW-1 that, under the agreement, defendant SIDHU would receive 10 percent of such proceeds.

  e. On or about October 31, 2017, defendant BUDHU sent an email to defendant KHANNA attaching a list of Arias' shareholders.

  f. On or about October 31, 2017, defendant KHANNA forwarded the email from BUDHU to CW-1.

  g. On or about November 1, 2017, defendant GILLESPIE sent to defendants BUDHU and KHANNA an email listing topics that were expected to be the subject of forthcoming Arias press releases.

  h. On or about November 1, 2017, defendant KHANNA forwarded the email from GILLESPIE to CW-1.

  i. On or about November 2, 2017, defendants HACKETT and KHANNA, along with CW-1, spoke by phone. On this call, defendant HACKETT suggested the conspirators distribute their Arias shares to the Offshore Brokerage Account and other Brokerage Accounts, in part in order to obtain better trade execution.

  j. On or about November 6, 2017, defendants BUDHU, KHANNA, and GILLESPIE, along with CW-1, spoke by phone. On the call, GILLESPIE told the other call participants about a forthcoming Arias press release. The participants on the call also reached an understanding that press releases and promotional efforts "need to go hand in hand."

  k. In or about November and December 2017, defendant HACKETT caused a call room to sell Arias stock to investors in exchange for a percentage of the investments made by such investors.

  l. On or about December 9, 2017, defendants HACKETT, BUDHU, and SIDHU, along with CW-1, spoke by phone. On the call, the participants discussed the price at which they would sell the

conspirators' Arias stock into the market, and agreed on a price of $5 per share.

    m.   On or about December 18, 2017, defendant BUDHU sent a message via Wire, an encrypted instant messaging app, to defendants HACKETT, SIDHU, and CW-1, stating that Arias press release would be published by 1:30 that day, and asking "is there a preferred timing to release those [other press releases]."

    n.   On or about the following days, defendant HACKETT engaged in manipulative trading in Arias stock:

| Date | Shares of Arias Stock |
| --- | --- |
| December 22, 2017 | 4,000 |
| January 8, 2018 | 4,000 |
| January 9, 2018 | 2,180 |
| January 10, 2018 | 4,000 |
| January 12, 2018 | 2,200 |

These trades were transacted on the open market, but HACKETT nevertheless pre-arranged the trades with CW-1's associate, who in fact was an undercover FBI agent, at prices that were designed to artificially avoid the deflation of, maintain the price of, and inflate the price of, Arias stock.

    o.   On or about the following dates, defendant GILLESPIE caused Arias to publish the following press releases using the facilities of interstate and foreign commerce:

8

| Date | Subject |
|---|---|
| December 1, 2017 | Change of legal name to "Arias Intel Corp." from "First Harvest Corp." |
| December 19, 2017 | Agreement with Medical Clinics in Florida |
| January 4, 2018 | ASNT successfully ends 2017 in reaching several milestones with its technology |
| January 16, 2018 | ASNT engages Nivalis Capital to pursue secondary listing on London Stock Exchange |
| January 24, 2018 | ASNT announces development of its cryptocurrency, blockchain and point of sale technology |

All in violation of Title 18, United States Code, Section 371.

## Count 2 - Securities Fraud

(Title 15, U.S.C., Secs. 78j(b), 78ff, and

Title 17, C.F.R., Sec. 240.10b-5)

25. The allegations set forth in paragraphs 1 through 8 are re-alleged as if fully set forth herein.

26. Beginning on a date unknown to the Grand Jury but no later than October 2017, and continuing until in or about January 2018, within the Southern District of California and elsewhere, defendants ANDREW HACKETT, ANNETTA BUDHU, VIKRAM KHANNA, KULDEEP SIDHU, and KEVIN GILLESPIE did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by Arias Intel Corp., in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Arias Intel's Corp.'s securities.

27. Paragraphs 11 through 24 of Count 1 are realleged and incorporated by reference as more fully describing the manipulative and deceptive devices and contrivances used in connection with the purchase and sale of securities.

All in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATIONS

28. The allegations contained in paragraphs 1 through 8 and Counts 1 and 2 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

29. Upon conviction of one or more of the offenses set forth in Counts 1 and 2, defendants ANDREW HACKETT, ANNETTA BUDHU, VIKRAM KHANNA, KULDEEP SIDHU, and KEVIN GILLESPIE shall forfeit to the United States any property, real and personal, constituting or derived from proceeds traceable to such offenses.

30. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been

transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: June 29, 2018.

A TRUE BILL:

_____
Foreperson

ADAM L. BRAVERMAN
United States Attorney

By: _____
AARON P. ARNZEN
Assistant U.S. Attorney

11