# Exhibit 1



**U.S. Department of Justice**

**Robert S. Brewer, Jr.**
United States Attorney
Southern District of California

| | |
|---|---|
| Aaron P. Arnzen | (619) 546-8384 |
| Assistant U.S. Attorney | aaron.arnzen@usdoj.gov |

---

| | |
|---|---|
| San Diego County Office | Imperial County Office |
| Federal Office Building | 516 Industry Way |
| 880 Front Street, Room 6293 | Suite C |
| San Diego, California 92101-8893 | Imperial, California 92251-7501 |

August 30, 2019

*Via email delivery*

Marc S. Nurik
Law Office of Marc S. Nurik
15551 Manning Avenue, #302
Los Angeles, CA 90024
marc@nuriklaw.com

Joshua J. Jones
Michelle C. Angeles
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
joshua_jones@fd.org
michelle_angeles@fd.org

In re:   United States v. Hackett, et al., 18CR3072-BTM

Dear Counsel:

I am writing to provide notice of expert witnesses in the case against your clients, Andrew Hackett and Annetta Budhu ("Defendants"). The United States reserves the right to inform you of additional information in the future.

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), I write to provide a written summary of the expert testimony that the United States intends to use pursuant to Federal Rules of Evidence 702, 703, and 705 during the jury trial in the above-referenced criminal matter.   The United States reserves the right to offer additional testimony by this expert, or other expert witnesses, pursuant to Federal Rules of Evidence 701-705, and for these experts to amend or adjust their opinions and testimony and bases therefor, based on information perceived by or made known to the expert before or during trial.

In re: <u>United States v. Hackett, Budhu</u>
18CR3072-BTM
Page 2

### 1. Thomas Carocci

The United States intends to call Thomas I. Carocci as an expert witness.  Mr. Carocci is Assistant General Counsel of the Criminal Prosecution Assistance Group ("CPAG") at FINRA.  Prior to joining CPAG in 2008, Mr. Carocci worked for approximately one year as a Special Investigator at the Member Regulation Department at the National Association of Securities Dealers ("NASD"), which was FINRA's predecessor. In that role, he conducted routine and special cause examinations of FINRA member firms, and investigated brokerage firm's books and records, operations, and sales practices to determine if they were in compliance with FINRA rules, SEC regulations and U.S. securities laws. He has also served in other roles at NASD, including Counsel in CPAG, Investigator in the Examinations and Investigations group, and Senior Analyst in Public Offering Review. As set forth in the attached C.V., Mr. Carocci has also worked as Vice President, Compliance Regulatory Affairs at Goldman Sachs & Co., and Vice President, In-House Counsel at Bowes Funds LLC. In addition, Mr. Carocci has provided training to federal and state law enforcement agencies regarding securities markets, fraud schemes, and investigative techniques. We will send under separate cover copies of transcripts of testimony previously provided by Mr. Carocci in securities fraud matters.

Among other things, Mr. Carocci is expected to provide at trial background testimony concerning the nature, structure, and regulation of the securities markets, and the roles of FINRA and the Securities and Exchange Commission ("SEC") in such regulation.  Mr. Carocci is expected to testify regarding the following topics: (a) background information about the nature, structure, and regulation of the securities markets; (b) the SEC's and FINRA's roles in regulating the trading of stocks of publically-traded companies; (c) general securities industry terms; (d) disclosure requirements of publicly-traded companies registered with the Securities and Exchange Commission ("SEC"); (e) documents required to be filed with the SEC to comply with such disclosure requirements; (f) the general characteristics of acquiring and merging a public shell with a private company; and (g) types of manipulative trading, including match trades, wash trades, and marking the close.

He will also define various terms for the jury, including but not limited to, OTC Markets, reverse merger, shell company, promissory note, restricted shares, free-trading shares, affiliate, opinion letter, transfer agent, "pink sheets" and "Bluesheets."  Mr. Carocci may define other similar terms, including terms that arise during the course of the trial and on cross-examination.

For example, we expect that Mr. Carocci will testify, in sum and substance, as follows:

- Stock is a type of investment signifying ownership in a corporation, and represents a claim on the corporation's assets and earnings. Stock is measured in shares, which investors can buy and sell.

- The United States Securities and Exchange Commission ("SEC") is an independent agency of the United States government responsible for enforcing the federal securities laws, which are designed to provide the investing public with full disclosure of all material facts regarding matters involving the offer, purchase, and sale of securities, among other things. These laws protect the investing public by maintaining fair and honest securities markets and eliminating manipulative practices that tend to distort the

price of stock.

- The Financial Industry Regulatory Authority or "FINRA" is the self-regulatory organization for the securities industry, operating under the SEC's authority. FINRA regulates the activities of its members, which include member brokerage firms and registered employees of those firms, and promulgates rules accordingly.
Among other things, FINRA regulates members' conduct and provides discipline for rule violations. FINRA issues professional licenses and conducts related examinations. In addition, FINRA conducts surveillance across different securities and product platforms, including equities (stock) markets. FINRA conducts such surveillance not only with respect to its members, but also non-members, pursuant to agreements that it has with various exchanges, entities, and markets, such as OTC Markets, NASDAQ and the New York Stock Exchange ("NYSE"). FINRA often makes referrals to the SEC.

- A "stock market" is where shares of a company are traded. There are two types of stock markets: exchanges and over the counter. "Exchanges" are centralized marketplaces where stock is traded, such as the New York Stock Exchange or the NASDAQ. "Over the Counter" ("OTC") markets are electronic quotation systems that show only stock quotes, volume and last sale price.

- The over-the-counter or "OTC Markets" is an inter-dealer quotation and trading system. Although OTC Markets has fewer listing requirements than the NYSE and the NASDAQ, the SEC still regulates the OTC Markets. OTC Markets maintains different tiers for companies with large, midsize, and small capitalizations, and those tiers carry different requirements.   The issuer is placed in one of three tiers within the Pink Sheets market based, in part, on how much information the issuer makes available to the public.

- "Level 2" is a subscription-based service that provides real-time access to the price quotes from market makers registered in every NASDAQ-listed and OTCBB security. The Level 2 window shows the bid prices and sizes on the left side and the ask prices and sizes of the right side.

- A "public company" is a company that has issued stock which is traded on a stock market. Federal law may require public companies to file reports with the SEC. Different stock markets also have different listing requirements, which may also require SEC filings.   A public company has a board of directors and officers.

- A "reverse merger" is a process by which a private company is merged into a public company and continues to trade as that public company.

- Federal law may require public companies to file and/or amend previously filed reports with the SEC, including but not limited to the following:

    o   10-K:   annual report of the company's business and financial condition;

    o   10-Q: quarterly report of the company's financial condition;

- - o   8-K: report for "material" corporate events between reporting periods that shareholders should know about.

- A "shell company" is defined by regulation, specifically Rule 405 of the Rules and Regulations promulgated by the SEC. As set forth therein, a "shell company" is, among other things, a company that has no or nominal operations and minimal assets.

- "Restricted shares" are shares or "securities" of a publicly traded company (known as an "issuer") that are not registered with the SEC and cannot be sold to the public. Rule 144 of the Rules and Regulations promulgated by the SEC, however, permits the sale of restricted securities in certain circumstances.

- "Free-trading" shares are shares that are not restricted and can be sold, or traded, "freely."

- An "affiliate" of the issuer is a person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the issuer.

- Legal "opinion letters" generally represent the authority of the issuer to convert restricted shares into freely-traded ones.

- A "transfer agent" is a company assigned by the issuer to maintain records of investors, account balances, and transactions, including, among other things, transactions pursuant to which restricted shares are converted into freely-traded ones. A transfer agent, acting on the direction of the company issuing shares, issues and cancels stock certificates to reflect changes in ownership. Transfer agents conduct an analysis to determine if restrictions on stock certificates can and should be lifted so that the stock can become free-trading.   These analyses are focused on compliance with the SEC's registration requirements, and exceptions to those requirements.

- A "broker" is any person who facilitates stock transactions for the accounts of others. A "brokerage firm" is an entity that brings together buyers and sellers to facilitate a stock transaction. Domestic brokers and brokerage firms generally are required to register with the SEC and FINRA.

- A "market maker" or "dealer" is a brokerage firm that trades in a particular stock, and assumes the risk of holding a certain number of shares of a particular security in order to facilitate the trading of that security.

- "Bluesheet" data is information that FINRA members or other clearing firms provide to FINRA and the SEC concerning securities trading. Specifically, the data includes customer-specific information for a particular stock at a particular time, including customer name, address, account number, identity of the shares bought or sold, the number of shares bought or sold, the price, and the amount of money paid or received, among other things. Firms are required to provide this information to FINRA or the SEC

upon request.

Mr. Carocci may also define other terms, as those terms are defined in Rule 144 of the Rules and Regulations promulgated by the SEC and Section 13(d) of the Exchange Act of 1934 and the Rules promulgated thereunder.

In addition to, and consistent with defining various terms, including but not limited to the terms identified above, Mr. Carocci may describe the process of merging a public shell with a private company (the "reverse merger" process). Among other things, he may explain the process of acquiring the shell, cleaning up the shell, dealing with outstanding stock associated with the shell, and merging that shell with a private company. Mr. Carocci also may explain the process by which debt is converted into free-trading shares pursuant to SEC Rule 144, which would include, among other things, fulfilling requisite holding periods and affiliate status.

Additionally, relying on publicly available information, Mr. Carocci also is expected to summarize the trading prices and volumes of the stocks at issue, including Arias Intel Corp. He will also summarize the brokerage, "Bluesheet" and transfer agent records that have been produced in discovery to identify trades placed by or on behalf of defendants and their conspirators, and to describe the ownership structure of the companies (who owned how many shares) at different points in time.

Mr. Carocci will also testify about the common aspects of a pump and dump, market manipulation scheme. These include obtaining blocks of the subject company's stock for low prices; evading the SEC's registration requirements such as to make the stock free-trading (usually when such stock carries a restrictive legend); distributing the stock to various accounts and nominees to improve execution and conceal coordinated trading activity; "pumping" the stock to increase price and volume through press releases (the timing and content of which are often coordinated with efforts to promote the stock), promotions using, *e.g.*, call rooms, email and internet campaigns, and manipulative trading; dumping the shares at prices that are artificially inflated by means of promotions and press releases; and distributing the proceeds.

In connection with his testimony, Mr. Carocci will be preparing a series of summary charts. The government will provide copies of such charts in advance of trial. Please note that, in addition to Mr. Carocci, the government anticipates calling another summary witness to summarize, among other things, telephone, text, bank and brokerage records that have been produced previously.

Mr. Carocci will also testify that it is outside of business norms for public companies to disclose material, non-public information to persons and entities outside the company without a compelling need to do so, and selectively making such disclosures could violate Reg FD, in addition to other securities laws. Moreover, it is often illegal to trade on the basis of such information, or to tip others so that they can trade on the basis of such information.

In re: United States v. Hackett, Budhu
18CR3072-BTM
Page 6

### 2. Kara Kennedy

The United States will also seek to admit the testimony of Kara Kennedy as lay witness testimony.   Ms. Kennedy worked for ClearTrust LLC, which served as Arias Intel's transfer agent during the period of time relevant to the charged scheme.   Ms. Kennedy is expected to testify, *inter alia*, that:

- ClearTrust removed restrictive legends from stock certificates associated with 200,000 Arias Intel shares that Ms. Budhu obtained directly from First Harvest pursuant to an advisory agreement, and that Ms. Budhu later sold to Mr. Hackett pursuant to a share purchase agreement.

- Consistent with its policies and procedures, before removing the restrictive legend, ClearTrust received instructions from Arias Intel, and reviewed representations made by Ms. Budhu and Mr. Hackett, and in an opinion letter submitted by attorney John Dolkart.

- ClearTrust placed substantial weight on these representations, and reviewed them as part of an analysis of whether the referenced shares could and should be free-trading, or remain restricted, under the SEC's registration requirements.

In the event the Court disagrees, and considers the testimony of Ms. Kennedy to be expert testimony, please consider this to letter to provide notice of expected expert testimony by Ms. Kennedy.

\* \* \*

The government reserves the right to call substitute expert witnesses, as well as to call additional expert witnesses, and will provide advance notice of any intent to do so.

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), the United States hereby requests a similar written summary regarding experts you may call at trial.

Please do not hesitate to contact either of us if we can be of any assistance. We can be reached at (619) 546-8384 (Aaron) or (619) 546-9721 (Drew).

> Very truly yours,
>
> ROBERT S. BREWER, JR.
> United States Attorney
>
> *Aaron P. Arnzen*
> AARON P. ARNZEN
> ANDREW J. GALVIN
> Assistant U.S. Attorneys

# Exhibit 2



**U.S. Department of Justice**

*Adam L. Braverman*
*United States Attorney*
*Southern District of California*

| | |
|---|---|
| San Diego County Office<br>Federal Office Building<br>880 Front Street, Room 6293<br>San Diego, California 92101-8893 | Imperial County Office<br>516 Industry Way, Suite C<br>Imperial, California 92251-7501 |

July 19, 2018

1. Through my attorney, I have agreed to a proffer meeting with the U.S. Attorney's Office and agents to determine if I can provide reliable cooperation. I understand that this meeting will not involve plea discussions and is not being held in the course of plea discussions. I am not entitled to any benefit—including a reduction in sentence or favorable sentencing recommendation—for proffering. Whether I am permitted to cooperate or will receive a benefit for cooperating will be determined by the United States in its sole discretion after my proffer.

2. The United States will not offer in evidence in its case-in-chief, or in connection with any sentencing proceeding to determine an appropriate sentence, any statements I make during the proffer. The United States may, however, use my proffer statements to pursue leads and find other evidence. This other evidence may be used to prosecute me for any offense.

3. The following are the only exceptions to the first sentence in paragraph 2:

    a. If I knowingly lie to federal agents, commit perjury, or otherwise obstruct justice during or after the proffer, the United States may prosecute me for those offenses and may use my proffer statements during any stage of those proceedings, including its case-in-chief.

    b. The United States may use my proffer statements, and any evidence derived from my proffer statements, to (1) cross examine me if I ever testify, and (2) refute evidence, arguments, statements, and/or representations offered or elicited by me or on my behalf at a trial, sentencing, or any other proceeding.

    c. If at any time the court asks the United States a direct question about information I disclosed in the proffer, the United States must truthfully answer the question. The answer shall not constitute a breach of this or any other agreement between the parties.

    d. If the United States recommends a lesser sentence based on my assistance, the United States may disclose my proffer statements to the court in support of its motion.

4. This agreement applies only to my proffer statements. It does not apply to any statements I previously made or make at any other time. These are the only promises and understandings I have agreed to for this proffer. No other promises or understandings will be agreed to unless in writing and signed by all parties. I understand these rules. I have not been threatened or forced by anyone to proffer.

Andrew Hackett
Defendant

Michael Grahn
Attorney

Aaron P. Arnzen
Assistant U.S. Attorney

Jeremy Tarwater, FBI Special Agent
Witness to signatures